[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11306
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cv-01042-MHH-JEO

BOBBY JOE ALLEN,

Plaintiff-Appellant,

versus

MIKE BLAKELY, et al.,

Defendants,

ANDREW VICKERS,
ANDY VANSHOIACK,
CHRIS THOMPSON,
RODNEY HEAD,
HAYDEN PARHAM,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 22, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Bobby Allen, an Alabama prisoner, appeals *pro se* the district court's dismissal of his 42 U.S.C. § 1983 action for failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  Specifically, Allen argues that he did file a grievance and was not required to exhaust his administrative remedies because § 1997e(a) is inapplicable to § 1983 actions for money damages.  After review, we affirm.

## I. Background

Allen filed a § 1983 action against several employees of Limestone County Detention Facility: Chris Thompson and Rodney Head in both their official and individual capacities, and Andrew Vickers, Andy Vanschoiack, and Hayden Parham in their official capacities (collectively, "the defendants").  In his amended complaint, Allen alleged that the defendants violated his human rights by using excessive force and assaulting him during an October 3, 2017 incident at Limestone County Detention Facility ("Limestone"), where he was a prisoner.[1]

---

[1] Specifically, he alleged that Vickers attempted to "clothesline" him, Thompson choked him until he was nearly unconscious while Parham held him down, and Head hit his face until his eyes were "swollen close and blacked," all while he was handcuffed.  He also alleged that Vanschoiack failed to intervene.

The magistrate judge directed each defendant to file a special report presenting the sworn statements of everyone with knowledge of relevant facts or any investigation of Allen's claims in lieu of a formal answer.  The defendants collectively submitted a special report arguing that 42 U.S.C. § 1997e(a)[2] barred Allen from bringing the suit because he had not exhausted his administrative remedies by appealing the resolution of a grievance that he had filed regarding the October 2017 incident.  The defendants attached several documents to the report, including an affidavit of Limestone's Jail Administrator Vanessa Rich.  Rich stated that Allen filed a grievance stating that he wished to press charges against the defendants for assaulting him on October 3, 2017.  After reviewing video and audio recordings of the incident, which showed Allen attacking another inmate and spitting on correctional officers, Rich responded that Allen could not bring charges and could himself be charged with new offenses.  Rich also stated that Allen did not appeal the resolution of this grievance, *i.e.*, the response she provided, to Chief Deputy Sloss.

---

[2] 42 U.S.C.A. § 1997e states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

3

Rich included in her affidavit Limestone's Inmate Grievance Procedure ("grievance procedure") and Allen's relevant grievance record. According to the grievance procedure, inmates may file grievances via an electronic system which will be resolved "at the lowest possible level in the Facility's chain of command, based upon the nature of the grievance." If an inmate disagrees with the resolution of their grievance by a shift supervisor or the Jail Administrator, they must appeal to the Chief Deputy within five days of the receipt of the decision. [3]

Allen's grievance record showed that he filed an electronic grievance on October 3, 2017 (the "first grievance"), in which he described the October 2017 incident and stated that he wished to press charges against the defendants. Rich responded at 10:40 a.m. the following day, stating: "I viewed the incident from the beginning when you attacked [another inmate], observed you spitting on officers, and listened to audio from booking. You can't bring charges, and may have new charges." The grievance record shows that Rich closed the grievance on October 4, 2017 at 10:41 a.m. Allen did not appeal the resolution of this grievance to Chief Deputy Fred Sloss.

---

[3] Alternatively, inmates may send grievances regarding improper correctional officer behavior, such as excessive force, and other sensitive issues directly to the Jail Administrator and Chief Deputy. But if the direct grievance does not involve improper correction officer behavior, it will be returned to the inmate for processing in the standard manner.

The same day that Rich closed his first grievance, Allen filed a second grievance regarding the October 2017 incident, this one titled "RE:CAPTAIN RICH" (the "second grievance"). In the second grievance, Allen disputed the statements in Rich's reply to his first grievance, stated that Rich could "appeal this to person higher than [her]," asked her not to close his grievance because "I have the right to appeal [her] decision?" On October 6, 2017, Detention Operations Lieutenant Tammy Waddell replied to Allen's second grievance.[4] Waddell asked Allen whether she could close his second grievance because she had spoken with him in person about the issue. Following Allen's and Waddell's several exchanges regarding Allen's complaints against the defendants, Allen closed the second grievance himself on October 11, 2017. Allen did not appeal the resolution of this grievance to Chief Deputy Fred Sloss.

Allen responded to the defendants' special report, arguing that (1) the Limestone grievance procedure did not cover monetary damages, which he could only include in his § 1983 action, (2) his claim was not barred under § 1997e(a) because he filed a grievance, and (3) § 1997e did not apply to § 1983 claims.

The district court dismissed Allen's case for failure to exhaust administrative

---

[4] The record does not contain any reference to Tammy Waddell or her position other than the magistrate's report on the subject. The record does contain the grievance record, where someone with the username "twaddell" replied to Allen's second grievance. We assume for the purposes of this appeal that the magistrate was able to identify the individual by her username using some knowledge not contained in the record. It does not ultimately matter for the resolution of this appeal, however, since "twaddell" is indisputably not Chief Deputy Sloss.

remedies. The district court observed that Allen had not disputed that he had failed to appeal his grievances, but instead had argued that § 1997e(a)'s exhaustion requirement did not apply to his § 1983 action for money damages. Because § 1997e(a) applies to § 1983 claims, the district court dismissed his claims. Allen timely appealed.

## II. Standard of Review

We review *de novo* the lower court's "interpretation and application of 42 U.S.C. § 1997e(a)'s exhaustion requirement." *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005). "We review the district court's findings of fact for clear error." *Bryant v. Rich*, 530 F.3d 1368, 1377 (11th Cir. 2008). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## III. Discussion

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life" and "entirely eliminates judicial discretion and instead mandates strict

exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" *Johnson*, 418 F.3d at 1155 (quoting *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001)).  Exhaustion is a prerequisite to suit "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages." *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Not only does §1997(e) require exhaustion, but the exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  To properly exhaust all available administrative remedies, a prisoner must complete the administrative review process as set forth in the applicable prison grievance procedure.  *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Failure to exhaust administrative remedies requires that the action be dismissed.  *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004).  "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

The record here demonstrates conclusively that Allen did not properly exhaust his administrative remedies.  Allen did not appeal to Chief Deputy Sloss either Rich's response to his first grievance or Waddell's response to his second

7

grievance, as outlined in the grievance procedures.[5]  Therefore, the district court was correct to dismiss his claim.

Allen's arguments to the contrary are all foreclosed by law.  He states that he "attempted" to exhaust his administrative remedies and did, in fact, file multiple grievances.  But that is not the standard established in *Woodford*—the exhaustion must be "proper," meaning *all* the administrative steps are followed, including an appeal.  548 U.S. at 83–84.

Allen also argues that because he filed a lawsuit under § 1983, he was not bound by the requirements in § 1997e.  But § 1997e by its own terms applies to any claims brought "under section 1983."  42 U.S.C. § 1997e(a). Allen's argument is contrary to the plain text of the statute and also to Supreme Court precedent.  *See Porter*, 534 U.S. at 532 ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").  Finally, Allen notes that he "filed a grievance and no results were provided from the administrative agency."  Liberally construed, he argues that the

---

[5] We note that Rich closed the first grievance only one minute after she responded to Allen.  The record does not suggest one way or another if an inmate can appeal a "closed" grievance.  Since it is the defendant's burden to prove exhaustion, we will assume for the sake of this opinion that Allen could not directly appeal that first grievance to Chief Deputy Sloss and therefore attempted to appeal it by filing a second grievance.  Even still, Allen did not properly exhaust his administrative remedies because he did not appeal to Chief Deputy Sloss the resolution of his second grievance resolution, a resolution Allen closed himself, meaning he did not exhaust the grievance procedure appeals system.

particular remedies he sought, *i.e.*, money damages or charges against the prison officials, were not available to him through the grievance procedure.[6]  But this argument is also foreclosed by Supreme Court precedent: "[A] prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process."  *Woodford*, 548 U.S. at 85; *see also Booth*, 532 U.S. at 734.  Thus, Allen still had an affirmative duty to exhaust his administrative remedies by appealing to Chief Deputy Sloss.

For these reasons, the judgment of the district court is affirmed.

**AFFIRMED.**

---

[6] If Allen is, in fact, simply arguing that he should not have to exhaust his administrative remedies because the prison did not respond in the way he wanted, that argument misunderstands the very purpose of the exhaustion requirement.  Allen is required to appeal any decision regarding his grievances to the Chief Deputy before filing in federal court.  *See Woodford*, 548 U.S. at 89 ("Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court.'" (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).